**Janell S. MARIN, Appellant,**

**v.**

**IESI TX CORPORATION, Appellee.**

**No. 01–08–00539–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 11, 2010.

Rehearing Overruled Aug. 5, 2010.

Robert D. Clements, Jr., Robert D. Clements, Jr. & Associates, Alvin, TX, for appellant.

John R. Gilbert, Gilbert & Gilbert, Angleton, TX, for appellee.

Panel consists of Justices KEYES, ALCALA, and HANKS.

### OPINION ON REHEARING

ELSA ALCALA, Justice.

Appellant, Janell S. Marin, has filed a motion for rehearing and for en banc reconsideration of our opinion issued on October 15, 2009. We withdraw our opinion and judgment of October 15, 2009 and substitute this opinion and judgment in their place. Because we issue a new opinion in connection with the denial of rehearing, Marin's motion for en banc reconsideration of our prior opinion is moot. *Richardson–Eagle, Inc. v. William M. Mercer, Inc.*, 213 S.W.3d 469, 472 (Tex. App.-Houston [1 Dist.] 2006, pet. denied).

Marin appeals from a judgment in favor of appellee, IESI TX Corporation ("IESI"). The judgment was rendered in accordance with the jury's findings that Marin committed forgery, misapplication of fiduciary property, fraud, and conversion. In nine issues, Marin challenges the trial court's admission of evidence, the legal and factual sufficiency of the evidence, and the award of exemplary damages. We conclude that the trial court did not err in the admission of the evidence, that the evidence is legally and factually sufficient, and that the trial court properly awarded exemplary damages. We affirm.

### Background

IESI is a waste management company based in Fort Worth, Texas. IESI purchased Envirotex, Inc. ("Envirotex") in December 1998. Marin was the president and a co-owner of Envirotex. After the purchase, Envirotex became IESI's Alvin Division and Marin was hired as the Alvin Division manager. IESI also gave Marin accounting and financial responsibilities for the Alvin Division because she was a certified public accountant in Texas.

As part of an audit conducted during the first quarter of 2004, IESI's accounting firm, Ernst & Young, sent out balance confirmation notices to three customers in the Alvin Division. These customers were the City of Alvin, the City of League City, and the City of Friendswood. The notices sought to confirm that the amount the customer owed to IESI matched the amount owed in IESI's records. All three customers responded that their numbers did not match IESI's. Marin was asked to investigate in order to reconcile the discrepancies in the amounts. Several days later, at IESI's office where the audit was being done, Ernst & Young received three letters purportedly from Alvin, League City, and Friendswood confirming that the original amount listed in the balance confirmation request was actually correct.

Ernst & Young and IESI immediately suspected at least one of the letters was a forgery. The signature of Lonna Stein on the followup letter received from League City differed significantly from her signature on the response to the original balance confirmation request. IESI called Lonna Stein, who denied the letter or signature had come from her.

IESI began an investigation of the Alvin Division. Marin denied any involvement with the letters when IESI inquired whether she knew anything about them. The investigation found that (1) all three letters were forgeries; (2) the fax header indicated the letters were sent from Marin's office; (3) Melissa Lawler, a clerk in the Alvin Division, had been asked by Marin to obtain sample letterheads from Alvin, League City, and Friendswood; (4) money owed to IESI by its customers had been overstated by $1.585 million; and (5)

customer checks payable to IESI were deposited into an Envirotex account in the amount of $112,209.33. After the completion of the investigation, IESI determined that inaccuracies on accounts receivable and payable resulted in an overstatement of the Alvin Division's profits by $2.4 million. IESI terminated Marin's employment shortly after the investigation.

IESI filed suit against Marin seeking (1) some of the expenses associated with the Alvin Division investigation; (2) the IESI money deposited by Marin in the Envirotex account; (3) bonuses paid to Marin based on the financial performance of the Alvin Division that would not have been paid had the Division's earnings been accurately stated; and (4) exemplary damages based on Marin's intentional conduct.

During discovery, Marin sent a request for disclosure under Texas Rule of Civil Procedure 194 to IESI.[1] In its response, IESI designated Steve Moody and Alyssa Martin as fact witnesses, allowing for the possibility that their testimony may include expert opinion. Specifically, in response to the request for disclosure of "persons having knowledge of relevant facts," IESI disclosed the following information regarding Moody and Martin:

> Mr. Moody has knowledge of IESI's accounting systems, corporate policies, and corporate procedures. He has knowledge of the facts and circumstances surrounding the activities at the IESI Alvin office that form the basis of this lawsuit.
>
> . . . .
>
> Ms. Martin is an accountant who was hired by IESI to conduct an investigation into the activities at the Alvin office.

In response to the request for disclosure seeking information concerning testifying experts, IESI disclosed, in pertinent part, the following:

> Mr. Moody is a fact witness and an employee of IESI. He has knowledge of IESI's accounting systems, corporate policies, and corporate procedures. He has knowledge of the facts and circumstances surrounding the activities at the IESI Alvin office that form the basis of this lawsuit. As an accounting professional, some of his testimony may take the form of expert testimony regarding accounting matters.
>
> . . . .
>
> Ms. Martin is an accountant who was hired by IESI to conduct an investigation into the activities at the Alvin office for IESI business purposes and not specifically for the purpose of providing expert testimony. She is a fact witness, but as an accounting professional, some of her testimony may take the form of expert opinion testimony regarding accounting matters.

At trial, Moody and Martin testified about their employment at IESI. During their testimony, IESI documents were admitted into evidence. The trial court overruled Marin's objection that the documents were inadmissible due to IESI's failure to produce the documents prior to trial, as required for evidence reviewed by experts. The trial court admitted the documents, determining that Moody and Martin were fact witnesses and not experts.

After the jury trial, the trial court awarded (1) $97,239.15 in actual damages to IESI for accounting expenses related to the investigation, bonuses paid based on inaccurate financial information, and conversion; (2) $17,678.87 to IESI in prejudgment interest; and (3) $310,105 in exem-

---

1. *See* Tex.R. Civ. P. 194.1, 194.2 (providing basic discovery of specific categories of information without objection).

plary damages to IESI for intentional fraud and misapplication of fiduciary property. The trial court denied Marin's Motion for Remittitur and Motion for New Trial.

## Admissibility of Evidence

In her first issue, Marin contends "the trial court abused its discretion in admitting evidence that was subject to a mandatory exclusion for not being produced in discovery." Specifically, Marin contends that IESI designated Moody and Martin as expert witnesses but did not disclose any documents reviewed by them, which required exclusion of the non-produced documents under the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 193.6(a), 194.2(f)(4)(A). The exhibits about which Marin complains are Exhibits 6, 7, 10, 11, 12, 13, 14, 15, 33, 35, 36, 37, 38, and 39.[2] In her ninth issue, Marin contends that the admission of the documents deprived her of the jury's reasonable consideration of her counterclaim.

### A. Applicable Law

■■■ "The admission and exclusion of evidence is committed to the trial court's sound discretion." *Benavides v. Cushman, Inc.,* 189 S.W.3d 875, 878–79 (Tex. App.-Houston [1st Dist.] 2006, no pet.) (citing *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995)). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *See Alvarado,* 897 S.W.2d at 754. We uphold the district court's evidentiary ruling if there is any legitimate basis for the

ruling. *Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998).

■■ A fact witness may give opinion testimony if his opinions are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Tex.R. Evid. 701. An expert is a witness qualified by "knowledge, skill, experience, training, or education" in an area of "scientific, technical, or other specialized knowledge." Tex.R. Evid. 702. An expert may testify in the form of opinions or otherwise if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* A witness may qualify as both a fact witness and an expert witness. *Rogers v. Dep't of Family & Protective Servs.,* 175 S.W.3d 370, 377 (Tex.App.-Houston [1st Dist.] 2005, pet. dism'd w.o.j.) (stating witness may qualify and testify as both fact and expert witness); *see also Tex. First Nat'l Bank v. Ng,* 167 S.W.3d 842, 858 (Tex.App.-Houston [14th Dist.] 2005, judgment vacated w.r.m.) (noting bank's senior vice president "testified as both a fact and expert witness").

Rule 194 of the Texas Rules of Civil Procedure provides that if an expert is retained by a party, the other party may request disclosure of "all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony." Tex.R. Civ. P. 194.2(f)(4)(A). Texas Rule of Civil Procedure 193.6(a) provides that a party who fails to make, amend, or supplement a discovery response in a

---

**2.** Marin's brief mistakenly refers to Exhibit 8. Based on the description of the exhibit and the record, it is clear she is referring to Exhibit 7. Moreover, in her original brief, Marin included eight other exhibits, but she concedes in her reply brief that she did not properly object to those exhibits at trial. The

challenge to those exhibits, therefore, is waived. *See Mieth v. Ranchquest, Inc.,* 177 S.W.3d 296, 307 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (holding failure to object to evidence at trial waives complaint on appeal) (citing Tex.R.App. P. 33.1).

timely manner may not introduce in evidence the material or information that was not timely disclosed, unless the court finds that there was good cause for the failure to make, amend, or supplement the discovery response timely, or that the other parties will not be unfairly surprised or prejudiced by the failure to make, amend or supplement. TEX.R. CIV. P. 193.6(a). The party seeking to introduce the evidence carries the burden of establishing good cause, lack of unfair surprise, or lack of unfair prejudice. TEX.R. CIV. P. 193.6(b). A finding of good cause, lack of unfair surprise, or lack of unfair prejudice must be supported by the record. *Id.* The expert disclosure rules do not apply to fact witnesses. Rather, the Texas Rules of Civil Procedure provide for requests for production to obtain documents within the possession, custody, or control of parties. *See* TEX.R. CIV. P. 196.1–.6. Moody, an employee of IESI, and Martin, an auditor that contracted for IESI, were both subject to the control of IESI, a party to these proceedings.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R. EVID. 801(d). The rules of evidence classify some evidence as non-hearsay and some evidence as hearsay that is admissible under an exception to the hearsay rule. *See* TEX.R. EVID. 802 ("Hearsay is not admissible except as provided by statute or these rules...."); TEX.R. EVID. 803 ("The following are not excluded by the hearsay rule...."). For example, one exception to the hearsay rule is records of "regularly conducted activity." TEX.R. EVID. 803(6).

**B. Analysis**

■ Marin challenges the trial court's ruling that Moody and Martin are fact witnesses rather than expert witnesses by asserting that the witness list supplied by IESI lists them as experts. Marin, however, misstates the record. In response to Marin's requests for disclosure, IESI designated Moody and Martin as fact witnesses, but also identified them as "accounting professionals," stating *some* of their testimony "may take the form of expert opinion regarding accounting matters." The record, therefore, shows that some of the testimony by Moody and Martin could take the form of an expert opinion concerning accounting matters. Although IESI designated Moody and Martin as experts as to some accounting matters on the witness list, the trial court ruled their testimony was admissible as testimony from fact witnesses. We conclude the mere fact that the witness list identified Moody and Martin as possibly giving expert testimony does not establish that they did actually give expert testimony. *See Rogers,* 175 S.W.3d at 377; *Tex. First Nat'l Bank,* 167 S.W.3d at 858.

In this appeal, Marin does not specifically refer to any portion of the record where Moody and Martin testified as experts, with the exception of Moody's testimony concerning the fees paid to Weaver and Tidwell, which is addressed in the discussion below pertaining to Exhibit 10. Marin makes no assertion that Martin was an expert for any reason other than the fact that she was designated as possibly giving some expert opinion concerning "accounting matters." Marin's argument is that Moody gave his opinion based on hearsay, which Marin contends necessarily made Moody an expert and that Moody had to be an expert in order to testify to the reasonableness and necessity of the Weaver and Tidwell fees. The documents admitted through Moody, however, were not admitted as hearsay evidence relied on by an expert. Rather, as detailed below, the documents were admitted as either non-hearsay evidence, under an exception to

the hearsay rule, or were repetitive of unobjected to testimonial evidence.

### 1. Exhibits 6 and 7

Exhibits 6 and 7 are copies of the forged letters received from Friendswood and League City that misstate the cities' account balances. These exhibits were introduced through Moody. Moody testified that the letters were given to him by the auditors from Ernst & Young. Moody stated these forged letters contradicted the earlier letters and were the event that triggered the need for an investigation of the Alvin Division. IESI offered the exhibits for that limited purpose and not for the truth of any matter asserted in the letters. The trial court admitted the letters on that basis and instructed the jury accordingly.

Marin's complaint on appeal is that Moody testified to hearsay, which only an expert can do. But Exhibits 6 and 7 were not offered to prove the truth of the matter asserted and, therefore, were not hearsay. *See* TEX.R. EVID. 801; *Ash v. Hack Branch Distrib. Co.*, 54 S.W.3d 401, 411 (Tex.App.-Waco 2001, pet. denied) (concluding out-of-court statements not hearsay because not offered for truth of matter asserted).

We overrule Marin's first issue with respect to Exhibits 6 and 7.

### 2. Exhibit 10

Exhibit 10 is an accounting summary created by Moody showing the amount of accounting fees incurred during the investigation of the Alvin Division, which IESI sought as damages in this case. Marin objected that Moody would have to testify as an expert to prove the fees were reasonable and necessary. Marin asserted that Moody, as an expert, had reviewed Exhibit 10 in forming his opinion that the fees were reasonable and necessary, and,

therefore, Exhibit 10 was subject to the exclusion of Rule 193.6 because it had not been timely disclosed. When Marin objected to the admission of Exhibit 10 and Moody's testimony concerning the accounting fees, she complained that opposing counsel had not "given any good cause for not producing this. And they [sic] are not showing failure to prejudice." After examining the exhibit and questioning counsel, the trial court allowed Moody to testify to the amount of the fees incurred.

On appeal, Marin asserts that IESI did not carry its burden of showing good cause or lack of unfair surprise. Marin cites only a single unpublished case to support her contention that she was unfairly surprised. *See Hatch v. Tex. Prop. & Cas. Ins. Guar. Assoc.*, No. 01–06–00631–CV, 2007 WL 2011041 (Tex.App.-Houston [1st Dist.] July 12, 2007, no pet.). However, *Hatch* is distinguishable. In that case, this Court reviewed the record to see if any evidence supported the trial court's finding that there *was* unfair surprise. *See id.* at *6. Here, we review the record to see if any evidence supports the trial court's finding that Marin was not unfairly surprised. As noted in *Hatch,* "We must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Id.* (citing *Owens–Corning Fiberglas Corp.*, 972 S.W.2d at 43).

The record shows that Moody testified at trial that the Weaver and Tidwell fees were "necessitated by the things that had happened [at the Alvin Division]." Moody also testified that the amounts charged by Weaver and Tidwell were reasonable charges. Marin did not object to either of these statements. When IESI's counsel began to ask Moody if he knew what accountants were paid and if he was an accountant, Marin's counsel objected.

In a discussion before the bench, the trial court stated it found no unfair surprise to Marin because the petition specifically sought damages based on the costs of investigating the Alvin Division. IESI sought damages for "[t]he costs incurred by IESI in investigating and remedying the accounting and management problems caused by [Marin's] conduct. This amount is not in excess of $200,000.00." Within the factual allegations, IESI specifically named Weaver & Tidwell, but not Ernst & Young. Although it did not disclose a precise amount, IESI disclosed it was seeking economic damages for "the cost of IESI's investigation into and correction of the false accounting entries" at the Alvin Division. Furthermore, during his deposition, Moody testified concerning the amounts paid to Weaver & Tidwell and to Ernst & Young for the investigation. The trial court also stated there was no surprise with respect to the Ernst & Young invoice because it was a single amount and was not itemized or detailed. In finding no surprise as to Exhibit 10, the trial court said it was also ruling to "sustain the objection as to any further testimony by this witness as to what's reasonable and necessary as to any further questioning along those lines." Marin did not request the jury be instructed to disregard the previous testimony that the fees were reasonable and necessary.

■ Concerning the Weaver & Tidwell fees, we hold the record supports the trial court's finding that Marin was not unfairly surprised. Both the petition and discovery responses gave her notice that IESI sought as damages its costs for investigating the Alvin Division. *See Williams v. County of Dallas*, 194 S.W.3d 29, 33 (Tex. App.-Dallas 2006, pet. denied) (upholding trial court's determination of lack of unfair surprise concerning back taxes accrued after filing of suit where petition gave notice

lawsuit covered all claims for delinquent taxes, including taxes becoming delinquent after filing of suit until judgment).. We also note that the amount of damages reflected in Exhibit 10 and awarded by the jury was $47,840.31, significantly below the amount of $200,000 pleaded.

■ With respect to the Ernst & Young fees, we hold that the error, if any, in admitting the evidence was harmless. The jury awarded "$0" in damages for the Ernst & Young fees.

We overrule Marin's first issue with respect to Exhibit 10.

### 3. Exhibits 11, 12, 13, 14, and 15

Exhibits 11, 12, 13, and 14 are IESI's profit and loss statements for the calendar years 2000, 2001, 2002, and 2003. Exhibit 15 is a summary of Marin's earnings and bonuses paid from IESI. Marin contends these documents, "which go to the amount and theory of damages," should have been produced in response to her requests for disclosure because they "had all been reviewed by, if not prepared by, Steve Moody."

■ Moody was the controller for IESI. As such, Moody was the employee in charge of the books and records of IESI. Moody was also personally involved in investigating the Alvin Division. Moody's testimony was based on his perception as the primary person at IESI in charge of making, maintaining, and reviewing the corporate books and accounts. We conclude the trial court properly characterized Moody's testimony concerning these exhibits as that of a fact witness and not an expert witness. *See Hartis v. Century Furniture Indus., Inc.*, 230 S.W.3d 723, 736 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (furniture store's controller's opinion testimony concerning fair market price admissible as fact witness testimony be-

cause it was based on controller's perception and experience in selling furniture). The provisions of Rule 194.2(f) do not apply to fact witnesses. Therefore, Exhibits 11, 12, 13, 14, and 15 were not required to be produced in response to Marin's request for disclosure and are not subject to the exclusion provisions of Rule 193.6.

We overrule Marin's first issue with respect to Exhibits 11, 12, 13, 14, and 15.

#### 4. Exhibit 33

Exhibit 33 is a list of accounts for the Alvin Division. Marin objected that it was a document prepared or reviewed by Martin and not disclosed. IESI responded that Martin, as an accountant that performed the audit of IESI, would be testifying to the facts found in the audit and not offering an opinion based on Exhibit 33. On appeal, Marin asserts Exhibit 33 "goes directly to the *amount and method* of calculating damages."

Martin testified to the content of Exhibit 33, including that she found a number of customers of the Alvin Division that had been charged but not made any payments. She also stated the records of the accounts looked suspicious to her as an auditor. Marin did not object to any of this testimony, but only to the admission of Exhibit 33.

 Because she failed to object to Martin's testimony, Marin waived any objection to the admission of Exhibit 33. *See*

---

**3.** In the motion for rehearing, Marin suggests that IESI's law firm has a pattern of not complying with discovery, citing to *Thompson v. Winkelmann*, No. 01–06–00457–CV, 2008 WL 921041 (Tex.App.-Houston [1st Dist.] Apr. 3, 2008, no pet.). This assertion is made for the first time in the motion for rehearing and is therefore waived. *See Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 885 (Tex.2001) (holding that appellate issue not raised until motion for rehearing was waived); *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex.2001) (holding

---

*Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex.2007) (complaining party waives error in admission of evidence if evidence introduced elsewhere without objection).

We overrule Marin's first issue with respect to Exhibit 33.

#### 5. Exhibit 35

 Exhibit 35 is an accounting "analytic" run by IESI. Marin's objection to the admission of this document was initially sustained. However, IESI re-offered Exhibit 35 during redirect examination, asserting Marin "spent a half hour cross-examining [Moody] on that document." The trial court allowed the document to be admitted on that basis and Marin did not object when it was re-offered. Error in the improper admission of evidence is usually deemed harmless if the objecting party "opens the door" by introducing the same evidence or evidence of a similar character. *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 473 (Tex.1998). Furthermore, by failing to object to its admission when it was re-offered under a different theory, any error is not preserved. *See Bay Area Healthcare Group, Ltd.*, 239 S.W.3d 231 at 235.

 We overrule Marin's first issue with respect to Exhibit 35.[3]

---

that party waives error by failing to raise issue on appeal); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating that issue in motion for rehearing is waived if original brief "is not sufficient to acquaint the Court with the issue and does not present an argument that would allow the court to decide the issue"). Moreover, in *Thompson*, the appellants did not raise an issue concerning any purported discovery abuse. Therefore, this Court's opinion contains no discussion relevant to this case.

### 6. Exhibit 36, 37, 38, and 39

Exhibits 36 through 39 are invoices from landfill companies charging IESI for their services. Marin's objection to the admission of these invoices was initially sustained. However, when IESI offered these a second time, Marin did not object. Therefore, Marin waived any error in the admission of these documents. *See id.*

We overrule Marin's first issue with respect to Exhibits 36, 37, 38 and 39.

### Forgery, Fraud, and Misapplication of Fiduciary Property

In her fourth, fifth, and sixth issues, Marin challenges the legal and factual sufficiency of the evidence to support the findings that she committed forgery, fraud, and misapplied fiduciary property. The instructions to the jury for each of these allegations required that proof meet the clear and convincing evidentiary standard.

### A. Sufficiency of Evidence under Clear and Convincing Standard

Clear and convincing evidence is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re J.O.A.,* 283 S.W.3d 336, 345 (Tex.2009). "When the legal sufficiency of the evidence is challenged: [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* "This does not mean that a court must disregard all evidence that does not support the finding." *Id.* "Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence." *Id.* "If, after conducting its legal sufficiency review of the record evidence, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then that court must conclude that the evidence is legally insufficient." *Id.* at 345–46.

"When the factual sufficiency of the evidence is challenged, only then is disputed or conflicting evidence under review." *Id.* at 346. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* "The court of appeals should further explain in its opinion 'why it has concluded that a reasonable factfinder could not have credited disputed evidence in favor of the finding.' " *Id.*

Any ultimate fact may be proved by circumstantial evidence. *Russell v. Russell,* 865 S.W.2d 929, 933 (Tex.1993); *see also Lee Lewis Const., Inc. v. Harrison,* 70 S.W.3d 778, 785 (Tex.2001) (circumstantial evidence can prove gross negligence to support award of punitive damages).

### B. Forgery

In her fourth issue, Marin challenges the legal and factual sufficiency of the evidence under the clear and convincing standard to support the finding that she committed forgery.

### 1. Applicable Law

■ Under section 32.21, a person commits an offense if he forges a writing with intent to defraud or harm another. TEX. PENAL CODE ANN. § 32.21(b) (Vernon Supp. 2008). "Forge" means to alter, make, complete, execute, or authenticate any writing so that it purports: (1) to be the act of another who did not authorize that act; (2) to have been executed at a time or place or in a numbered sequence other than was in fact the case; or (3) to be a copy of an original when no such original existed. *Id.* § 32.21(a)(1)(A). The intent to defraud or harm may be established by circumstantial evidence. *Williams v. State*, 688 S.W.2d 486, 488 (Tex.Crim.App.1985).

### 2. The Jury Instructions

Within her fourth issue, Marin contends the "key element of *intent to defraud or harm* was omitted from the jury charge." Marin asserts that without a jury instruction on that element, the award of exemplary damages cannot stand. Texas Rule of Civil Procedure 278 provides, in pertinent part, "Failure to submit a definition or instruction shall not be deemed a ground for reversal of the judgment unless a substantially correct definition or instruction has been requested in writing and tendered by the party complaining of the judgment." TEX.R. CIV. P. 278; *see McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 585–86 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) (holding complaint concerning definition in jury charge waived despite party's objection because Rule 278 requires tender of substantially correct instruction).

■ Question 9, the forgery question, asked the jury, "Do you find by clear and convincing evidence that JANELL S. MARIN knowingly or intentionally committed forgery?" The trial court instruct-ed the jury on the burden of proof for "clear and convincing evidence," as well as the definitions of "knowingly" and "intentionally." Finally, the trial court instructed the jury as follows:

"Forgery" means:

(A) to alter, make, complete, execute, or authenticate any writing so that it purports:

(i) to be the act of another who did not otherwise act;

(ii) to have executed at a time or place in a numbered sequence other than was in fact the case; or

(iii) to be a copy of the original when no such original existed.

During the charge conference, Marin made the following objection to Question 9:

Question 9 is again, another, quote "cap busting" question. And again, there are no pleadings that would justify submitting Question No. 9 under the penal code. It's making allegations with regards to forgery that are not within the original petition that—the current active petition. And there is insufficient evidence or no evidence that would support this. Any documents that might be used to justify any—this allegation should have been produced in response to legitimate discovery requests under our requests for disclosure and were not. No good cause has been shown and we would object to the submission of Question No. 9.

Marin did not object that the instruction accompanying Question 9 was not correct, nor did she request a "substantially correct definition or instruction." Because Marin never objected on the ground that the jury was not instructed on the "key element of intent to defraud or harm," any error on this ground is not preserved for appeal. *See* TEX.R. CIV. P. 278; *McCarthy*, 251 S.W.3d at 585–86. We must also ad-

dress the sufficiency of the evidence in light of the charge given to the jury. *See St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 530 (Tex.2002) (noting that when charge is submitted without objection, sufficiency of evidence is measured against charge given).

### 3. Analysis

■■■ The record shows that while Ernst & Young was conducting a routine audit of IESI, it sent balance confirmation letters to a number of IESI's clients, including the cities of Alvin, Friendswood, and League City. All three cities responded, stating they owed less than the amount reflected in IESI's books. Marin was asked to contact the cities concerning the discrepancies. Within days, the auditors working at IESI received letters from the three cities stating their earlier letters were incorrect and they owed the amounts stated in IESI's books. The letters were all faxed from the Alvin Division. The auditors immediately noticed the signature of Lonna Stein, the controller for League City, was not the same on the second confirmation letter as on the first letter. At trial, Stein and the city employees from Alvin and Friendswood all testified that the later confirmation letters were not written by them and that their signatures were forged.

Tom Brown, one of IESI's vice-presidents, testified that when he confronted Marin with the forged letters, she reacted strangely and this caused him to believe she had something to do with the forged letters. Brown also testified that an Alvin Division employee told him that Marin instructed the employee to get samples of the letterheads from the cities of Alvin, Friendswood, and League City.

Melissa Lawler, another former Alvin Division employee, testified that, shortly before the time the forged letters were sent to the auditors, Marin asked her to get samples of the letterhead from Alvin, Friendswood, and League City. The time and date stamp on all three forged letters matches the stamp from Marin's fax machine.

Marin identifies evidence that she contends renders the above evidence legally and factually insufficient. Marin asserts, "Lawler testified she never gave Marin the supposedly requested letterhead from the City of Friendswood and only gave Marin letterhead from the League City Chamber of Commerce (*not* the City). None of the documents had anything to do with the forged letters IESI claimed, and only one, (a letter *from* City of Alvin) was even on similar letterhead." Marin also emphasizes that no witness testified directly that Marin forged the letters from the cities. For example, Moody testified that he had no idea who created the letters or whether Marin was involved. Similarly, Stein testified that she had no knowledge that Marin had anything to do with Stein's name appearing on the letter that purported to be from League City. Marin also contends that Lawler's testimony was unreliable because she was on paid leave from IESI and because she testified inconsistently concerning whether IESI money had been deposited into the Envirotex account. Furthermore, IESI's accounting manager and chief development officer said they never observed Marin act inappropriately or violate her duties as an employee of IESI.

It is undisputed that the letters from the cities were not from the city officials whose names appear on the letters—in other words the letters purported "to be the act of another who did not otherwise act." As charged, the only remaining element that the jury needed to form a firm belief or conviction was the matter whether it was Marin who "alter[ed], ma[d]e, complete[d],

execute[d], or authenticate[d]" the letters. Here, circumstances introduced into evidence allowed the jury to form that firm belief or conviction. Marin asked for samples of the cities' letterheads shortly before the forged letters were sent to the auditors. Although Lawler did not provide the copies of the letterhead that were used, the fact remains that shortly before the forged letters were sent to the auditors Marin asked for the same or similar type of letterheads as the ones used in this case. Additionally, the forged letters were faxed from Marin's fax machine. When confronted about the forgeries, Marin acted suspiciously. The letters were sent to confirm erroneous account balances—balances that could reflect upon the amount of Marin's bonuses, which were tied to the performance of the Alvin Division. Finally, the credibility of Lawler and any other witness is to be decided by the jury, along with the weight to be given any testimony. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex.2003). A reasonable juror could form a firm belief or conviction Marin made the letters so that they purported "to be the act of another who did not otherwise act." *See Chapa v. Tony Gullo Motors I, L.P.*, No. 09–03–00568–CV, 2004 WL 1902533, at *8 (Tex.App.-Beaumont, Aug.26, 2004), *rev'd on other grounds*, 212 S.W.3d 299 (Tex. 2006) (holding evidence legally sufficient to support forgery finding under clear and convincing standard where plaintiff testified her signature and signature of her deceased husband were forged and presented proof of her usual signature for jury to review). Likewise, the disputed evidence is such that a reasonable factfinder could have resolved that disputed evidence in favor of the finding of forgery. *See id.* (holding evidence factually sufficient to support forgery finding under clear and convincing standard). Therefore, we hold the evidence is legally and factually sufficient to support the jury's finding concerning forgery.

We overrule Marin's fourth issue.

### C. Fraud

In her fifth issue, Marin challenges the legal and factual sufficiency of the evidence under the clear and convincing standard to support the finding that she committed fraud by making the same assertions she makes in the forgery case.

The jury was instructed,

Fraud occurs when—

 a. [A] party makes a material representation[,]

 b. The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

 c. The misrepresentation is made with the intention that it should be acted on by the other party, and

 d. The other party relies on the misrepresentation and thereby suffers injury.

"Misrepresentation" means a false statement of fact.

*See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (stating elements of common-law fraud: (1) material representation that was false when made; (2) when representation was made, speaker knew it was false or made it recklessly as positive assertion without any knowledge of its truth; (3) speaker made representation with intent that other party should act upon it; (4) other party actually and justifiably relied on representation; and (5) thereby suffered injury).

The record shows the books of the Alvin Division contained customers or other accounts receivable that did not exist. In addition, the books overstated the bal-

ances owed by Friendswood, League City, and Alvin. The incorrect account information resulted in the Alvin Division appearing to be more profitable than it was. Marin was paid bonuses based on the profitability of the Alvin Division, as incorrectly stated in the books. Moody testified that Marin, as the manager for the Alvin Division, was in charge of the books and tracking the accounts for the division. Moody also testified that Marin's user identification was linked with some of the falsified accounts and transactions.

Furthermore, the jury was presented with evidence that the letters from Alvin, League City, and Friendswood were forgeries. A former Alvin Division employee testified that Marin had asked her to obtain sample letterheads from Alvin, League City, and Friendswood. The fax header indicated the forged letters were sent from Marin's office. The three forged letters contained misstatements of fact concerning the balance owed by the three cities.

A reasonable juror could form a firm belief or conviction Marin knowingly misrepresented the accounts with the intention that IESI would act upon the information in paying Marin's bonuses, and, therefore, the evidence is legally sufficient to establish fraud. *See Foley v. Parlier,* 68 S.W.3d 870, 880–81 (Tex.App.-Fort Worth 2002, no pet.) (holding evidence legally sufficient to support jury's finding of fraud under clear and convincing standard where plaintiff testified defendant misrepresented value of business plaintiff wished to purchase, but defendant testified she did not). Also, the disputed evidence is such that a reasonable factfinder could have resolved that disputed evidence in favor of the finding of fraud. *See id.* (holding evidence factually sufficient to support fraud finding under clear and convincing standard). Therefore, we hold the evidence is legally and factually sufficient to support the jury's finding concerning fraud.

We overrule Marin's fifth issue.

### D. Misapplication of Fiduciary Property

■■■ In her sixth issue, Marin challenges "[w]hether the evidence was legally and factually sufficient to support the jury's findings that by clear and convincing evidence Janell Marin committed [sic] misapplied fiduciary property." Specifically, Marin contends the evidence is insufficient because there was no evidence that Marin withdrew money from the Envirotex account that belonged to IESI.

Question 8 asked the jury, "Do you find by clear and convincing evidence that JA-NELL S. MARIN knowingly or intentionally misapplied fiduciary property?" The definitions accompanying this question informed the jury of the meaning of "clear and convincing evidence," "intentionally," and "knowingly." The jury was also told,

"Misapply" means deal with property contrary to

(A) An agreement under which the fiduciary holds the property or

(B) A law prescribing the custody or disposition of the property.

*See also* Tex. Penal Code Ann. § 32.45(a)(2) (Vernon Supp. 2009).

The evidence shows that Marin deposited checks tendered for payment to IESI into the Envirotex account she controlled. Moody testified that customer payments should have been deposited into an IESI account and Marin did not have the authority to deposit customer payment checks into Envirotex's account. Furthermore, IESI did not know or approve of Marin's depositing of customer payment checks into the Envirotex account. Moody also testified that he examined Envirotex's

account and saw that $112,209.33 of checks payable to IESI were deposited in the account and that only $96,757,96 worth of checks had been written to IESI out of that account, so that the Envirotex account had approximately $15,000 in its account that should have been in the IESI account.

Marin contends there is no evidence she "ever got money out of the Envirotex account that was not hers." However, the withdrawal of the money was not part of the definition of misapplication of fiduciary property given to the jury. We address the sufficiency of the evidence in light of the charge given to the jury. *See St. Joseph Hosp.,* 94 S.W.3d at 530. Here, the evidence supports the jury's finding that Marin deposited IESI money into the Envirotex contrary to her duties as an IESI employee.

A reasonable juror could form a firm belief or conviction Marin dealt with property contrary to an agreement with IESI concerning the property. *See Bailey v. State,* No. 03–02–00622–CR, 2003 WL 22859984, at *6 (Tex.App.-Austin Dec.4, 2003, pet. ref'd) (evidence legally sufficient to support finding beyond reasonable doubt defendant misapplied fiduciary property by depositing funds from joint account into defendant's personal account). Looking to all the evidence, the disputed evidence is such that a reasonable factfinder could have resolved that disputed evidence in favor of the finding of misapplication of fiduciary property. *See id.* (evidence factually sufficient to support finding beyond reasonable doubt defendant misapplied fiduciary property by depositing funds from joint account into defendant's personal account).

We overrule Marin's sixth issue.

### Exemplary Damages

In her third issue, Marin asserts that an award of exemplary damages in excess of the statutory cap cannot be supported "without having any pleadings or without being tried by consent." Marin contends in her second issue that "the judgment for exemplary damages was excessive and exceeded the statutory cap." Marin presents the same argument for her second issue as she does for her seventh issue, in which she asserts the evidence is legally and factually insufficient to support exemplary damages.

### A. Exemplary Damages and the Statutory Cap

Exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM.CODE ANN. § 41.003(a) (Vernon Supp. 2009). In addition, exemplary damages awarded against a defendant may not exceed an amount equal to the greater of (1) two times the amount of economic damages; plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000; or (2) $200,000. *Id.* § 41.008(b) (Vernon Supp. 2009). This section requiring a cap on exemplary damages does not apply if the plaintiff seeks recovery of exemplary damages based on certain enumerated acts committed intentionally or knowingly, including forgery, misapplication of fiduciary property, and certain types of fraudulent conduct. *Id.* § 41.008(c)(8), (10), (11) (Vernon Supp. 2009). Here, the jury awarded $310,105 for exemplary damages. The judgment shows actual damages at $97,239.15. Therefore, if the exemplary damages cap applies in this case, the exemplary damages should be capped at $200,000. *See id.* § 41.008(b).

The judgment awards exemplary damages for breach of fiduciary duty and

fraud. The jury was asked to assess exemplary damages based upon its answer to Question 1 concerning a breach of fiduciary duty or its answer to Question 2 concerning fraud. The breach of fiduciary duty exception to the damages cap refers to section 32.45 of the Texas Penal Code that provides that a person commits an offense if he intentionally or knowingly misapplies property he holds as a fiduciary in a manner that involves substantial risk of loss to the owner of the property. *See id.* § 41.008(c)(11); TEX. PENAL CODE ANN. § 32.45 (Vernon Supp. 2009). Because the jury instructions and judgment refer to breach of fiduciary duty this was properly one basis for exceeding the exemplary damages cap.

The exceptions for the cap that refer to fraudulent conduct refer to sections 32.46 and 32.47 of the Texas Penal Code. Section 32.46 is called "Securing Execution of Document by Deception," and states, "A person commits an offense, if with intent to defraud or harm any person, he, by deception: . . . causes another to sign or execute any document affecting property or service or the pecuniary interest of any person." TEX. PENAL CODE ANN. § 32.46 (Vernon Supp. 2009). Section 32.47 is called "Fraudulent Destruction, Removal, or Concealment of Writing," and it states, "A person commits an offense if, with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the veracity, legibility, or availability of a writing, other than a governmental record." *Id.* § 32.47.

As noted above, the jury was instructed that a fraud occurs when

a. [A] party makes a material representation[,]

b. The misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

c. The misrepresentation is made with the intention that it should be acted on by the other party, and

d. The other party relies on the misrepresentation and thereby suffers injury.

The finding of fraud here, therefore, does not conform with either of the penal code sections mentioned in the section that allows the cap to be exceeded. *See id.* §§ 32.46, 32.47. Because the jury instructions and judgment refer to fraudulent conduct that was not the type of conduct described in section 41.008 that allows the damages cap to be exceeded, the type of fraud found here was not a proper basis for exceeding the exemplary damages cap. *See Madison v. Williamson,* 241 S.W.3d 145, 161 (Tex.App.-Houston [1st Dist.] 2007, pet. denied) ("Before a court will apply the exception to the statutory damage caps in section 41.008(c), a plaintiff must obtain jury findings that the defendant violated one of the criminal code provisions listed in the statute, and that the violation was committed knowingly or intentionally.").

In summary, there was no instruction pertaining to exemplary damages for the forgery itself; thus, the judgment does not award exemplary damages for forgery. Furthermore, the finding of fraud by the jury does not conform with the type of fraud for which the exemplary damages cap may be exceeded. We, therefore, focus solely on whether the exemplary damages cap could be exceeded for the breach of fiduciary duty.

**B. Notice from the Pleadings**

 Marin contends the trial court's judgment is erroneous by failing to cap the damages at $200,000 because the pleadings by IESI did not specifically plead a request to exceed the damages cap. Texas follows a "fair notice" stan-

dard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 896 (Tex.2000). Rule 47 of the Texas Rule of Civil Procedure provides a pleading "shall contain . . . a short statement of the cause of action sufficient to give fair notice of the claim involved. . . ." Tex.R. Civ. P. 47. "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense." *Roark v. Allen,* 633 S.W.2d 804, 810 (Tex.1982). The test of fair notice is whether an opposing attorney of reasonable competence, on review of the pleadings, can ascertain the nature and the basic issues of the controversy and the testimony probably relevant. *Bowen v. Robinson,* 227 S.W.3d 86, 91 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). The "fair notice" requirement of Texas pleading relieves the pleader of the burden of pleading evidentiary matters with meticulous particularity. *Id.*

In addition to the general "fair notice" standard of Rule 47, Rule 56 states, "When items of special damage are claimed, they shall be specifically stated." Tex.R. Civ. P. 56. This Court has stated the recovery of exemplary damages must be "supported by express allegations." *Al Parker Buick Co. v. Touchy,* 788 S.W.2d 129, 130 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding).

██ Here, IESI states in its petition under a section entitled "Exemplary Damages" that

> Considering the wrongful nature of Ms. Marin's transactions, her fraudulent acts and omissions, her intentional acts, her breach of the fiduciary duties she owed to IESI, and the degree to which her actions offend the public's traditional sense of justice and propriety, an award

of exemplary damages is justified and warranted in this case. IESI sues for exemplary damages.

IESI's petition gives fair notice that IESI sought exemplary damages based on Marin's conduct, specifically alleging "breach of fiduciary duties owed to IESI." IESI includes factual allegations that Marin forged letters from Alvin, Friendswood, and League City and that she deposited checks payable to IESI in accounts that she controlled. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.008(c)(8), (10).

We conclude IESI's petition seeking exemplary damages provides fair notice of the basic issues supporting its claim for intentional misapplication of fiduciary property and, therefore, necessarily alerted Marin that the exemplary damages cap would not apply because the statute governing exemplary damages provides that the cap may be exceeded for that circumstance. *See Horizon/CMS Healthcare Corp.,* 34 S.W.3d at 896; *cf. Al Parker Buick Co. v. Touchy,* 788 S.W.2d 129, 130 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding) (denying discovery of defendant's net worth because petition alleged "no facts that might establish [plaintiff's] right to a recovery of exemplary damages from [defendant]").

Marin also contends that under Rule 56, a party seeking exemplary damages must not only specifically plead for exemplary damages but also must specifically plead the intent to "bust the cap"—i.e., the intent to exceed the limit on exemplary damages imposed by section 41.008 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.008(b). Marin cites no authority for this proposition, stating it is a matter of first impression. We decline to create a new pleading requirement in exemplary damages cases.

Although not directly on point, several courts have addressed the pleading requirement for the cap on punitive damages, holding the cap is an affirmative defense and must be specifically pleaded by the defendant for it to apply. *Wackenhut Corrections Corp. v. de la Rosa*, 2009 WL 866791, at *50 (Tex.App.-Corpus Christi Apr.2, 2009, no pet.); *Horizon/CMS Healthcare Corp. v. Auld*, 985 S.W.2d 216, 233 (Tex.App.-Fort Worth 1999), *rev'd in part on other grounds*, 34 S.W.3d 887 (Tex.2000).[4] In addition, the Supreme Court of Texas, addressing a different statutory cap on damages,[5] referred to the entitlement to the cap as an affirmative defense. *Horizon/CMS Healthcare Corp.*, 34 S.W.3d at 904. Finally, in addressing the cap on exemplary damages in the prior version of Chapter 41, the Supreme Court of Texas held that a defendant's pleading gave "fair notice" of defendant's intent to invoke the statutory cap on exemplary damages, despite referring to incorrect section of Chapter 41. *Id.* at 896–97.

Here, the pleadings gave fair notice of the intent to seek exemplary damages, including allegations of conduct to which the cap does not apply, which necessarily alerted Marin of its intent to exceed the damages cap. The jury made findings, supported by sufficient evidence, that such conduct occurred. Because Marin cites to no authority to support her contention concerning the requirement of pleading an intent to "bust the cap" on exemplary damages, and authority from the Supreme

Court of Texas suggests her position is incorrect, we overrule Marin's third issue.

### C. Sufficiency of Evidence for Exemplary Damages

In her seventh issue, Marin challenges "[w]hether the evidence was legally and factually sufficient to support the jury's findings that by clear and convincing evidence Janell Marin be assessed punitive damages."

Marin challenges exemplary damages for forgery, but the jury did not award exemplary damages for forgery. The judgment can be upheld if the evidence is legally sufficient concerning breach of fiduciary duty.

In her brief, Marin's sole challenge to the award for exemplary damages for fraud or breach of fiduciary duty states,

> It is impossible for a jury to find in favor of [IESI] on this issue by "clear and convincing evidence" in the face of *all* the witnesses['] statements that they had no proof that *Janell Marin or anyone on her behalf* was, in any way, involved in forgery or fraud.
>
> The record is absent of any evidence [sic] that links Janell Marin to forgery, fraud, or misapplying fiduciary property.

(Emphasis in original).

We have already addressed the sufficiency of the evidence supporting the jury's findings of forgery, fraud, and misapplication of fiduciary duty and found the evidence both legally and factually suffi-

---

4. *But see Hall v. Diamond Shamrock Refining Co., L.P.*, 82 S.W.3d 5, 22–23 (Tex.App.-San Antonio 2001), overruled on other grounds, 168 S.W.3d 164 (Tex.2005) (holding cap is not affirmative defense and automatically applies in all cases where plaintiff does not plead and prove exception to cap); *Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 759 (Tex.App.-Houston [14th Dist.] 1998) (same).

5. *See* TEX.REV.CIV. STAT. art. 4590i. Act of June 16, 1977, 65th Leg., R.S., ch. 817, § 11.02, 1977 Tex. Gen. Laws 2039, 2052 (formerly TEX.REV.CIV. STAT. art. 4590i). Article 4590i was repealed by Act of June 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

cient. We therefore overrule Marin's second and seventh issue.

## Conversion

In her eighth issue, Marin challenges the legal and factual sufficiency of the evidence that IESI proved by a preponderance of the evidence it "suffered actual damages from the deposit of the City of Oyster Creek and Jamaica Beach checks in the Envirotex, Inc. Account."

In reviewing the trial court's verdict for legal sufficiency, we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005). A challenge to the legal sufficiency of evidence will be sustained when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla. *Id.* at 810. Evidence does not exceed a scintilla if it does no more than create a mere surmise or suspicion that the fact exists. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004).

In determining the factual sufficiency of the evidence to support a jury's finding, courts of appeals are to weigh all the evidence, both for and against the finding. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001). In reviewing a factual sufficiency challenge to a finding where the burden of proof is not on the complaining party, we set aside the verdict only if the evidence in support of the finding is so weak as to render the verdict clearly wrong and manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In reviewing a factual sufficiency challenge to a finding where the burden of proof is on the complaining party, that party must show that "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.,* 46 S.W.3d at 242. In conducting our review, we may not substitute our judgment for that of the jury, which is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc.,* 116 S.W.3d at 761.

█ We address the sufficiency of the evidence in light of the charge given to the jury. *See St. Joseph Hosp.,* 94 S.W.3d at 530.

Jury Question 3 concerning conversion states,

> Do you find that JANELL S. MARIN converted the check from the City of Oyster Creek in the amount of $4,559.14 and/or the check from the Village of Jamaica Beach in the amount of $9,839.70?
>
> *INSTRUCTION*
>
> "Conversion" as used in this charge means the wrongful exercise of dominion and control over IESI TX CORPORATION'S checks, in denial of or inconsistent with its rights. A conversion may occur from the unauthorized and wrongful control, wrongful acquisition or wrongful withholding of the checks which is to its exclusion or inconsistent with its property rights.

The jury answered yes for both Oyster Creek and Jamaica Beach. In response to Question 4, the damages question, the jury determined the damages in the amount of each check.

On appeal, Marin contends that the only witness at trial who examined the Envirotex account was Moody, who testified "he did not have any information that Janell Marin ended up getting any money out of the Envirotex account for her personal use that was not hers." Marin's concluding argument in this section of her brief is that "it is pure speculation as to whether IESI was owed the funds from the City of Oyster Creek and Village of Jamaica Beach."

The evidence is legally and factually sufficient to support the jury's finding of conversion. Although Marin contends there is no evidence that she "got any money out of the Envirotex account that was not hers," whether she took money that was not hers out of the account is irrelevant based on the jury charge. The jury was instructed that "conversion may occur from the unauthorized and wrongful control, wrongful acquisition or wrongful withholding of the checks which is to its exclusion or inconsistent with its property rights." The evidence is undisputed that Marin deposited the checks into her Envirotex account when they were properly payable to IESI. This is more than a scintilla of evidence from which a rational juror could determine that Marin had exercised control over the checks in a manner inconsistent with IESI's rights to the checks. We therefore hold the evidence is legally sufficient to support the jury's finding concerning conversion. *See Am. Network Leasing Corp. v. Corporate Funding Houston, Inc.*, No. 01–00–00789–CV, 2002 WL 31266230, at *15 (Tex.App.-Houston [1st Dist.] Oct. 10, 2002, pet. dism'd) (mem. op.) (overruling sufficiency of evidence challenge to claim for conversion of partnership checks deposited in account of partner instead of partnership account, as required by agreement).

We also conclude the evidence is not so weak as to render the verdict clearly wrong and manifestly unjust and is, therefore, factually sufficient. *See id.* at *15.

We overrule Marin's eighth issue.

### Actual Damages

In her motion for rehearing, Marin asserts that the evidence is legally insufficient to support the jury's award of actual damages to IESI for reasonable and necessary accounting fees paid to Weaver and Tidwell for the investigation of the Alvin Division. Specifically, Marin contends there is no evidence that the fees were "reasonable and necessary." Marin also contends the evidence is legally insufficient to support the jury's award of actual damages for bonuses wrongfully paid to Marin for any year other than 2003.

### A. Weaver and Tidwell Fees

Concerning the Weaver and Tidwell fees, Marin asserts that this Court held that Moody testified as a fact witnesses, not an expert. Marin also contends that because the fees had to be proved reasonable and necessary by an expert, there is no longer any expert evidence in the record to support a finding that the fees were reasonable and necessary. First, as we stated above, a witness can testify as both a fact witness and an expert witness in the same case. *See Rogers,* 175 S.W.3d at 377; *Tex. First Nat'l Bank,* 167 S.W.3d at 858. In our discussion above concerning Exhibit 10, concerning the Weaver and Tidwell fees, we did not hold that Moody was not an expert with respect to the reasonableness and necessity of the fees. Rather, our holding concerning Exhibit 10 accepted Marin's assertion that Moody was an expert on this subject matter and addressed whether there was unfair surprise in admitting Exhibit 10. Second, as also discussed above, Moody testified, without an objection from Marin, that the fees were necessary due to the accounting problems at the Alvin Division and were reasonable.

We overrule this assertion in Marin's motion for rehearing.

### B. Bonuses

 Marin did not raise the issue concerning actual damages for the bonuses paid to her in her original brief to this court. This issue is therefore waived. *See Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.,* 46 S.W.3d 880,

885 (Tex.2001) (holding that appellate issue not raised until motion for rehearing was waived); *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex.2001) (holding that party waives error by failing to raise issue on appeal); *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 646 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (stating that issue in motion for rehearing is waived if the original brief "is not sufficient to acquaint the Court with the issue and does not present an argument that would allow the court to decide the issue").

We overrule this assertion in Marin's motion for rehearing.

## Conclusion

We affirm the judgment of the trial court.