Opinion issued February 24, 2011                                                                     

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00127-CV

———————————

Charlotte Austin, Appellant

V.

Michael Lee
Weems, Appellee



 



 

On Appeal from the 23rd District Court

Brazoria County, Texas



Trial Court Case No. 3184-BH-97

 



 

O P I N I O N

          Charlotte
Austin sued Michael Weems for the wrongful death of her husband, Earvin Austin,
arising from an auto-pedestrian accident. 
Mrs. Austin appeals the trial court’s judgment on the jury’s finding of
no negligence and contends that the trial court erred in denying her motion to
exclude the point-of- impact opinion testimony of Deputy Henry K. Jordan and
overruling her trial objections to his testimony.  In addition to his oral testimony, Deputy
Jordan’s point-of-impact opinion was contained in five places in three exhibits
offered at trial.  Mrs. Austin did not
timely object to three instances in those exhibits where Deputy Jordan
expressed his opinion on point of impact. 
The denial of a motion to exclude out of the presence of the jury may
make it unnecessary to object to documents containing the same opinion in front
of the jury.  But, to do so, the motion
must clearly address not only the opinion, but each of the different ways the
opinion will be presented to the jury through documents.  Mrs. Austin’s motion to exclude only
addressed the expert’s opinion in his testimony and two of the five instances
his opinion was expressed in the exhibits. 
She was required to object to each part of the exhibits that contained
his opinion to preserve error on appeal. 


Mrs. Austin also contends on appeal
that the jury’s finding was against the great weight and preponderance of the
evidence and the trial court erred in denying her motion for new trial since
Weems’s counsel made an improper jury argument. 
We overrule her contentions and affirm.

Background

          On
the morning of December 17, 1995, Earvin Austin left the Big Tree Lounge a
little before 2:00 a.m.  He parked his
pick-up truck across from the Lounge on the south-bound shoulder of State
Highway 36—a two-lane road with a 55 mile per hour speed limit—and was
going  to cross the highway by walking
east-bound on foot back into the Lounge’s parking lot.  Michael Weems, traveling north, struck and
killed Austin in the highway.

          Charlotte
Austin sued Weems for wrongful death. 
During the trial 13 years after the accident, the jury heard conflicting
testimony regarding whether Weems swerved into the lane for opposing traffic,
the south lane, or remained in his own lane, the north lane.  In other words, testimony differed as to
whether Mr. Austin had already walked more than halfway across the road or was
on his side of the road and was preparing to cross.  More specifically, there was a swearing match
on whether Mr. Austin walked into the north-bound lane, where Weems had the
right of way, or was still on his own side of the road, near his truck parked
on the south side. 

The location of the point of impact
was the primary liability issue at trial. 
If Weems were driving on the wrong side of the road and Mr. Austin were
near his truck, a jury would likely find some fault for the accident rested
with Weems.  On the other hand, if Weems were
on his own side of the road, and Mr. Austin were walking on the wrong side of
the road, a jury would likely find that some fault for the accident rested with
Mr. Austin.   

Mrs. Austin called eye-witnesses
Gervaise Summers, James Marshall, Robert Smith, and Brigette Henry to testify
at trial in support of her claim that Weems hit Mr. Austin in the south-bound
lane.  Summers and Marshall testified
that they saw the point of impact in the south-bound
lane.  Henry, a passenger in Mr. Austin’s
truck parked on the side of the road in the south lane, testified that the
truck shook when Weems’s car passed.  Smith
testified at trial that he never saw the impact but he did see Weems swerve
into the south lane.  In his deposition,
however, he testified that he saw the accident and Weems was in the north lane,
which corresponds with his statement to police that Mr. Austin walked in front
of the car and Weems could do nothing to stop the accident.  Summers’s and Marshall’s trial testimony also
contradicted their earlier deposition testimony.[1]

Weems relied primarily on his own
testimony and the testimony of Deputy Henry K. Jordan with the Brazoria County
Sheriff’s Department.  Weems testified
that he struck Mr. Austin in the north-bound lane, but that he never saw Mr.
Austin until after impact.  When Officer
Jordan arrived on the scene about ten minutes after the accident, a firefighter
was directing traffic and the lanes had been blocked.  Witnesses disputed how many cars, if any, had
passed through the accident scene. 
Deputy Jordan documented the placement of the debris in the north-bound
lane, took some measurements, and obtained witness statements at the scene and
in the following days.  

          Over
ten months before trial, Mrs. Austin filed a motion to exclude the opinion
testimony of Deputy Jordan arguing that he was not qualified to testify as an
expert regarding the point of impact, causation, or fault and that his opinion
on those subjects was unreliable.  The
motion was directed at his testimony, not at his accident report, though the
motion objects to Deputy Jordan’s “opinions” on point of impact and the factual
background referred to two statements in the report.[2]  The trial court addressed the motion at the
close of Mrs. Austin’s evidence out of the presence of the jury.  There was no discussion during the hearing of
the five instances in his accident report in which Deputy Jordan opined on the
point of impact, but there were again some general objections to his point-of-impact
opinions. 

During that hearing, Deputy Jordan
testified that he had twenty years of law enforcement experience and had
investigated hundreds of accidents.  He
admitted, however, that he had no training in accident reconstruction or
physics and that the accident at issue was the only auto-pedestrian fatality he
had ever investigated.  He did not
consider himself to be an expert in accident reconstruction and point of impact.  He testified—based on his “training,
knowledge, skill, experience, common sense, and observations”—that he believed
the point of impact was in the north lane where Weems had the
right-of-way.  He stated he did not need
to reconstruct the accident completely to determine the point of impact.  His opinion rather was based primarily on the
location of the debris and the witnesses’ statements.  The trial court denied the motion to exclude
expert testimony and ruled that Deputy Jordan’s testimony was rationally based
on perception and “the jury was equally well positioned to draw inferences from
the data presented.”  

Deputy Jordan proceeded to testify
before the jury as to point of impact and his opinion that Mr. Austin was at
fault.  Weems also offered into evidence
three components of Deputy Jordan’s accident report—his diagram of the scene, a
standard report, and a narrative report of the accident.  Weems first offered the diagram of the scene,
which indicated the placement of the cars, debris, and point of impact.  After the trial court admitted the diagram,
Mrs. Austin objected to the point-of-impact opinion shown on the drawing and
argued Weems failed to show the proper predicate for the opinion.  The trial court overruled the objection as
untimely.  

Weems later offered Deputy Jordan’s
standard report into evidence.  His
standard report contained, in one section, his conclusion that Austin’s failure
to yield the right of way was a contributing factor to the accident[3]
and, in another section, two sentences that the point of impact occurred when
Weems struck Mr. Austin in the north-bound lane.  Mrs. Austin generally objected to opinions in
the standard report and specifically identified the right-of-way
statement.  The court sustained the objection
to the failure to yield the right-of-way statement and, after redactions,
admitted the standard report. 

Weems later offered the narrative portion
of Deputy Jordan’s police report into evidence through the records custodian
for the Brazoria County Sheriff’s Department. 
The narrative report stated, 

Debris near the center and
northeast of the center of the road indicated that as possibly the point of
impact.  Evidence at the scene indicated
that victim may have been standing or walking approximately 2 ft. east of the
center line of the roadway. . . There was no evidence visible to RO to indicate
that vehicle #1 was out of the proper lane or traveling at a high rate of
speed.  

 

Mrs. Austin objected to the narrative as including
“double hearsay.”[4]  The trial court then overruled the objection
and admitted the narrative into evidence. 


During final argument, Weems
attacked the credibility of one of Mrs. Austin’s eyewitnesses, Robert Smith,
for changing his testimony. 
Additionally, according to Mrs. Austin, Weems’s counsel made a gesture
implying that money had influenced Smith’s testimony.  Mrs. Austin made no objection to the
argument, nor did she advise the court of the gesture immediately after the
argument.  The jury found that Weems was
not negligent in causing the accident.  The
trial court entered judgment on the verdict. 


Mrs. Austin filed a motion for new
trial raising factual sufficiency of the evidence and improper jury
argument.  She amended her motion
twice.  In her second amended motion
filed three months after the verdict, Mrs. Austin asserted, for the first time,
that Weems’s counsel made a hand gesture during his argument indicating money
and thereby implied that Smith had been bribed to change his testimony.  She attached an affidavit from her counsel to
support the hand gesture allegation.  Weems
responded, without any sworn evidence attached, that his counsel did not
remember making the gesture, but even if he had, the implication would have
been that the witness wanted monetary compensation for Mr. Austin’s family, not
an implied accusation of bribery.  The
trial court denied Mrs. Austin’s motion for new trial and she filed a timely
appeal.

Opinion Testimony

          Mrs. Austin
argues the trial court erred in allowing Deputy Jordan’s opinion testimony on
point of impact because he was not qualified to give expert testimony under
Texas Rule of Evidence 702.[5]  Weems responds that Mrs. Austin failed to
preserve this issue for appeal because she did not object to documentary
evidence containing Deputy Jordan’s opinion. 
In the alternative, Weems argues trial court properly admitted Deputy
Jordan’s opinion because he qualified as a lay opinion witness under Rule
701.  See
Tex. R. Evid. 701.

I.       Preservation
of Error

To preserve error for appellate
review the complaining party must
timely and specifically object to the evidence and obtain a ruling.   See Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1).  “Error is waived if the complaining party
allows the evidence to be introduced without objection.”  Bay Area Healthcare Grp. Ltd. v. McShane, 239 S.W.3d 231, 235 (Tex.
2007).  Additionally, any error in the admission of evidence is waived if the
objecting party subsequently permits the same or similar evidence to be introduced without
objection.  Volkswagen of Am., Inc.
v. Ramirez, 159 S.W.3d 897, 907 (Tex. 2004).  Thus, a party fails to preserve error if it does not object to
the same or similar evidence that is offered by the opposing party.  See
Marin v. IESI TX Corp., 317 S.W.3d
314, 324 (Tex. App.—Houston [1st Dist.] 2010, pet. filed).

II.      Mrs. Austin’s Motion to Exclude

Mrs. Austin filed a pretrial motion
to exclude Deputy Jordan’s opinion on point of impact by challenging both his
qualifications and the reliability of his opinion on point of impact.  Mrs. Austin, therefore, did not need to raise
her objection to his testimony in front of the jury.  See Tex. R. Evid. 103(a)(1); see also Maritime Overseas Corp. v. Ellis,
971 S.W.2d 402, 409–10 (Tex. 1998) (holding that objection “before trial or
when the evidence is offered” is necessary to preserve reliability challenge to
expert testimony).  After a hearing out
of the presence of the jury, the trial court denied the motion and explained
that the testimony was admissible as lay witness testimony under Rule 701.  

A motion
to exclude, in effect, accomplishes the same thing as a running objection: it
eliminates the need to repeat the objection each time evidence is admitted on a
topic.  See Volkswagen of Am., 159 S.W.3d at 907.  A running objection reaches different types of evidence only
if the objecting party specifically identifies the part of the evidence that is
inadmissible and each source of that evidence. 
 Volkswagen of Am., 159 S.W.3d at 907 (stating that to preserve error
by running objection, objecting party must identify both “the source of the
objectionable evidence” and its “specific subject matter” and that error was
preserved because objection identified “the ways” that evidence would be
presented to the jury). 
Rule 103(a)(1) permits a ruling denying a motion to exclude testimony
outside the presence of the jury to preserve error without the necessity of
repeating the same objections, but only for “such evidence” that is the subject
of the motion.

          A.      Breadth
of the Motion to Exclude

We look to the motion to determine
its subject matter and the “source” or the “ways” that the objectionable
evidence would be presented to the jury.  
See Volkswagen
of Am., 159 S.W.3d at 907.  The motion did not identify for the trial court each specific
instance of Deputy Jordan’s opinion included in the police report through the diagram,
the standard report, and the narrative report. 
The following five iterations of Deputy Jordan’s opinion were admitted
through various portions of his police report: (1) “POI” indicated on the
diagram; (2) the standard report’s statement that, “Victim either walked onto or was standing in the North bound lane;”
(3) the standard report’s statement that, “POI APPROX. 2(ft) East of center
line;”  (4) the narrative report’s
statement that, “Debris near the center and northeast of the center of the road
indicated that as possibly the point of impact;” and (5) the narrative report’s
statement that, “Evidence at the scene
indicated that victim may have been standing or walking approximately 2 ft.
east of the center line of the roadway.” (emphasis added).  Mrs. Austin only raised the italicized
portions in her motion to exclude.[6]  The motion does not address the “POI”
notation in the diagram or the additional point-of-impact opinion statements in
the standard and narrative reports.    We
conclude, therefore, that the motion preserved error for Deputy Jordan’s trial
testimony and the admission of the two identified statements in the reports,
but did not preserve error for the three statements that were not identified.

We are mindful that one of our sister
courts of appeal has held that the trial court’s denial of a pretrial motion to
exclude was sufficient to preserve error without an additional trial objection
for the admission of not only numerous accident reports written by different
officers but also a police officer’s testimony discussing the same
accidents.  Huckaby v. A.G. Perry & Son, Inc., 20 S.W.3d 194, 204 (Tex.
App.—Texarkana 2000, pet. denied).  The
breadth of the motion in Huckaby differs
from the breadth of this motion.  The
court there reasoned that the motion “was not so narrowly drawn” as to apply
only to documentary evidence and not to testimony by a police officer that
discussed each of the same accidents.  Id. 
The court quoted a number of instances in the motion where the movant
requested exclusion of evidence of the prior and subsequent accidents.  The motion in Huckaby was also titled “Plaintiffs’ Objections, and Motion, to
Exclude Evidence.”  In contrast, Mrs.
Austin’s motion by its title is directed at testimony.  While the motion globally makes reference to
Deputy Jordan’s opinions, the opinions that are the focus of the motion are the
opinions as expressed in Deputy Jordan’s testimony, and the prayer sought the
exclusion of only his testimony on point of impact.  More importantly, her motion does not
specifically identify each objectionable portion of Deputy Jordan’s accident
report.

B.      Waiver in Light
of the Motion to Exclude

We next examine the effect of a motion to exclude that covers
testimony but does not cover each expression of the same opinion in exhibits
offered at trial.  Mrs. Austin’s counsel
conceded to the trial court that parts of the accident report were
admissible.  It was Mrs. Austin’s burden,
therefore, to identify the specific portions of each report that constituted
opinion testimony on the point of impact.  
See Jones v. State, 843 S.W.2d
487, 492 (Tex. Crim. App. 1992);[7] Lawrence v. Geico Gen. Ins. Co., No.
01-07-00873-CV, 2009 WL 1886177, at *5 (Tex. App.—Houston [1st Dist.] July 2,
2009, no pet.); Gen. Motors Corp. v. Harper,
61 S.W.3d 118, 126 (Tex. App.—Eastland 2001, pet. denied); see also 1
Steven Goode et al., Texas Practice
Series: Guide to the Texas Rules of Evidence §103.2 (3d ed. 2002) (stating
if an objection is made to the entirety of the document which does “not point
out precisely which parts were inadmissible,” it is “properly overruled if any
part of the offer was admissible.”).[8]  This she failed to do.

This rule has been applied by this court to require a party to
identify any specific objectionable portions of a police report.  Lawrence,
2009 WL 1886177, at *5-6.  In  Lawrence,
the plaintiff objected to the inclusion of expert opinions in a police report
and specifically identified the portion of the report that identified two
contributing factors to the accident. 
Much like the trial court here, the Lawrence
court sustained that objection to that part of the report.  On appeal, the plaintiff challenged the
admissibility of a diagram of the scene and to the opinions expressed in the
report regarding whether a vehicle was legally parked, the direction of travel,
and the position of the vehicles at the time of the collision.  We noted the general rule that an “objection
to evidence as a whole, which does not point out specifically the portion
objected to, is properly overruled if any part of that evidence is
admissible.”  Id. at *5.  Applying that
rule, we then held that the trial court properly overruled the objection
because the report contained admissible non-opinion evidence and the plaintiff
did not specifically identify the opinions that were challenged on appeal.  Id.
at *6.  The same is true here: the
plaintiff failed to identify each of the objectionable portions of the police
report. 

When the remaining portions of Deputy
Jordan’s accident report were admitted into evidence without a specific
objection, Mrs. Austin allowed the same or similar opinion as Deputy Jordan’s
oral testimony to be admitted to the jury, making the objected-to evidence
cumulative of the unobjected-to evidence. 
Any error as to the earlier objected-to evidence, therefore, was not
preserved.  See Marin, 317 S.W.3d at
324; see also Allstar Nat. Ins. Agency v.
Johnson, No. 01-09-00322-CV, 2010 WL 2991058, at *3–4 (Tex. App.—Houston
[1st Dist.] July 29, 2010, no pet.) (holding error not preserved where
objecting party did not renew hearsay objection to document when witness
testified to contents of document).  

Unlike
the Huckaby court, we do not find the potential for
contradictory rulings by the trial court a persuasive reason for rejecting the
general rule that a party must consistently object to the same evidence.  20 S.W.3d at 204 (“it would be contradictory
to exclude written accident reports and then allow a witness to testify on the
information in those reports”).  The fact
that it would be contradictory for a trial court to admit evidence in one form
at one point in the trial and exclude the same or similar evidence in another
form at another point has not stopped courts from adopting the well-established
rule requiring a party to object to the same evidence offered later during the
trial.  Richardson v. Green, 677 S.W.2d 497, 501 (Tex. 1984); Slayden v. Palmo, 108 Tex. 413, 194 S.W.
1103, 1104 (Tex. 1917).  For example, it
would be contradictory for a court to sustain a hearsay objection to testimony
by a witness concerning a conversation after earlier admitting testimony on the
same conversation by a different witness over objection (assuming no new
arguments are raised).  But courts still
require the objection to be repeated in order to preserve error.

This case demonstrates that the potential for contradictory
rulings is not a reason for extending an objection to statements that are never
called to the trial court’s attention.  A
trial court may sustain objections to specific portions of an exhibit even when
that court has ruled already on the admissibility of other evidence on the same
topic.  For example, a trial court may refuse
to admit an exhibit that contains opinions similar to opinions already admitted
under other rules of evidence, including that the exhibit may be cumulative of
the testimony or admitting the opinion in written form gives it greater
weight.  Or the trial court may change its
mind about the admissibility of the evidence after seeing how counsel has
already used the testimony before the jury and will further use the
exhibit.  See Clark v.
Trailways, Inc., 774 S.W.2d 644, 647 (Tex.
1989) (stating that requirement of timely objections is “designed to allow
trial courts to correct any errors made during the course of the proceedings”
and by failing to object at trial to testimony from undisclosed witness counsel
“effectively
den[ied the] trial court the opportunity to review and correct [its] prior”
ruling denying motion to exclude witness for lack of disclosure).
 In this case, the trial court sustained an objection to
Deputy Jordan’s written finding that Austin failed to yield the right-of-way
even though he permitted testimony on that issue.  Weems’s counsel tried to convince the trial court
that the opinion contained in Jordan’s standard report should be permitted
because the testimony was permitted, but the trial court refused.  The rule requiring an objection both to the
expert’s testimony and to specific portions of documents containing the
expert’s opinion aids the trial court and may result in a court excluding
evidence contained in a document. 

The rule
requiring a party to identify the specific portions of documents that contain
objectionable evidence is based on the practical reality that trial courts do
not need to read the entirety of an offered exhibit.  Testimony regarding law enforcement
investigations is an example.  If the
trial court erroneously allows a police officer to testify regarding hearsay
statements by an eyewitness that do not fall within a hearsay objection, the
objection is waived if the same statement appears elsewhere in the record and
no objection is made to the other evidence. 
See Sosa v. Koshy, 961 S.W.2d
420, 425–26 (Tex. App.—Houston [1st Dist.] 1997, writ denied) (holding that
party waived error as to police officer’s testimony regarding hearsay
statements by third parties because jury heard testimony that included the
statements before the party asked for a running objection).  

          C.      “No Objection” and Cumulative Evidence

Additionally, Mrs. Austin in effect withdrew her objections
to those portions of the standard report that contained two statements by
Deputy Jordan on the point of impact.  An objecting party who preserves error by
obtaining a ruling outside the presence of the jury waives any benefit to their
objection by affirmatively stating “no objection” when the evidence is
reoffered before the jury.  Gardner v. State, 306 S.W.3d 274, 293
(Tex. Crim. App. 2009); see Harrison v.
State, No. 01-09-00611-CR, 2010 WL 5187428, at *2 (Tex. App.—Houston [1st Dist.]
Dec. 23, 2010, no pet. h.) (concluding that objection raised to length of
pretrial voir dire was waived when counsel later replied that he had no
objection to seating of jury).  The
standard report specifically states, “Victim either walked onto or was standing
in the North bound lane.  [Weems] struck
pedestrian.  POI APPROX. 2(ft) East of
center line.”  Mrs. Austin objected that the report constituted hearsay and contained
unspecified opinions without a proper predicate.  The trial court asked to see the report,
recessed the jury, and instructed her to “show me where the opinions are.  Come up, counsel.”  Counsel identified the contributing factor
portion of the accident report in which Deputy Jordan stated that Mr. Austin
failed to yield the right-of-way.  He
then stated, “That’s it.”  The trial
court asked, “That’s the only one you have?” to which counsel replied, “Yes,
sir.”  The court ordered the report be redacted
to remove the reference to the contributing factor listed, and stated that he
would admit the standard report into evidence after the redaction.  The redactions were completed as the witness
testified, and Weems reoffered the standard report.  Mrs. Austin’s counsel renewed his objection
to the contributing factor but agreed that the redaction had removed that
opinion.  The standard report was then
admitted.  In other words, the trial
court sustained the only objection made by Mrs. Austin to the standard
report.  The portion that was not
redacted stated that, “Victim either walked onto or was standing in the
North bound lane.  [Weems] struck
pedestrian.  POI APPROX. 2(ft) East of
center line.” 

When Mrs. Austin affirmatively
stated that she had no other objection to the report, she waived her objection
to the point-of-impact opinion in the standard report.  By doing so, she failed to preserve any error
on the admission of Deputy Jordan’s testimony because it then became cumulative
of other evidence in the case.  See Marin, 317 S.W.3d at  324 (holding
that party fails to preserve error if it does not object to same or similar
evidence that is offered by opposing party).

It is true that the trial court was aware of the nature of
Mrs. Austin’s objection and that Mrs. Austin believed all Deputy Jordan’s
opinions on the point of impact were inadmissible expert opinions.  Tex.
R. App. P. 33.1(a)(1)(A) (requiring an objection to be stated “with
sufficient specificity to make the trial court aware of the complaint”).  Even if the trial court had prolonged the
recess to read the motion to exclude filed ten months earlier, the trial court
did not know that Deputy Jordan’s opinion was contained in three sentences in
two exhibits because no objection was ever raised to those sentences.  And, for one of the two exhibits, the standard
report, the trial court believed that there were no remaining objections after
the only objection that was made was sustained and the reports was redacted to
remove the only specifically identified material.  In conclusion, the objection was not specific
enough to apprise the court that it was directed at the standard report, the
identification of the point of impact in the diagram, or the second point of
impact statements contained in the narrative report.  In other words, the trial court was aware of
the nature of the objection but not the specific source of the objectionable
evidence (i.e. each of the five statements in the three reports).  See
Volkswagen, 159 S.W.3d at 907 (stating that running objection must clearly
identify “the source and specific subject
matter of the expected objectionable evidence.”).

We do not have the authority to change the general rule that
requires a party to object to same or similar evidence offered later during the
trial or the specific rule that requires a specific objection to the portions
of documents containing admissible and inadmissible statements.  We do not believe expert evidence should be
an exception to these general rules.[9] 

We overruled Mrs. Austin’s first
issue.  

Factual Sufficiency

          Mrs. Austin argues that the
jury’s finding that Mr. Austin was negligent, and not Weems, was against the
great weight and preponderance of the evidence. 


I.       Standard
of Review

When a party challenges
the factual sufficiency of a finding on an issue upon which that party had the
burden of proof, that party must demonstrate that the adverse finding is
against the great weight and preponderance of the evidence.  Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  We must consider and weigh all of the evidence
and set aside a verdict only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust.  Id.  The jury is the sole
judge of the witnesses’ credibility and the weight to be given their
testimony.  Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex.
2003).

II.      Factually Sufficient Evidence

Mrs. Austin contends
that all eye-witnesses to the accident testified that Weems hit Mr. Austin in
the south-bound lane where Mr. Austin waited to cross the road.  She asserts that only Weems and Deputy Jordan
testified that the point of impact occurred in the north-bound lane.  Summers and Marshall both testified at trial
that they saw the point of impact in the south-bound lane and Henry testified
that Weems passed so close to where she sat in Mr. Austin’s truck in the south
lane, that the truck shook as he passed. 
Several witnesses also testified that Weems stated to the police that he
had between one and three beers that night. 


The jury, however,
heard conflicting testimony about the location of Weems’s car at the point of
impact and the circumstances surrounding the accident.  For example, Weems attacked the credibility
of each of Mrs. Austin’s eye-witnesses.  Summers
and Marshall’s prior statements in their affidavits and depositions
contradicted their trial testimony. 
Summers, who was 14 years old at the time of the accident, testified at
trial that Weems made statements immediately after the accident that she had
not mentioned at her deposition or other pretrial statements.  She also testified at trial that she saw the
impact, but at her deposition stated she first saw Mr. Austin in the air after
he had been hit.  At trial she also
described what Mr. Austin wore the night of the accident, but at her deposition
she did not remember his clothing. 
Marshall at trial testified that the area was well lit, but at his
deposition he described the area as dark. 
Henry admitted that she never gave a statement to the police.  Weems also impeached Smith who testified at
trial that he never saw the accident and that Weems swerved into the south
lane.  In his deposition and his
statement to police, he stated that he not only saw the impact, but the impact
occurred in the north lane.  

In support of the
jury’s verdict, Weems and Deputy Jordan testified that point of impact occurred
in the north-bound lane and that he drove below the 55 mile per hour speed
limit.  The diagram, standard report, and
the narrative all indicated that the impact occurred in the north-bound lane
including a statement by a firefighter at the scene indicating that the
location of the debris, “[M]ay be the point of impact.”  Weems stated that he did not see Mr. Austin
at the moment of impact, but several witnesses at the accident testified that
the night was dark and that Mr. Austin wore dark clothing.  Weems also denied that he consumed any
alcohol that night and nothing in Deputy Jordan’s report corroborates the
testimony of Mrs. Austin’s witnesses that Weems told the police that he had been
drinking.  In fact, the narrative states,
“RO did not detect any odor of alcohol on the driver’s breath or any indication
by his actions that he may have been drinking. 
RO observed no evidence of alcohol inside his vehicle.”  

The jury is the sole
judge of the witnesses’ credibility and the weight to be given their
testimony.  See id.  The jury here was
free to disbelieve the trial testimony of the eye-witnesses, especially given
the change in their testimony and the 13 years between the accident and
trial.  Further, the evidence of the darkness,
speed limit, Mr. Austin’s dark clothing, and the testimony of witnesses placing
the point of impact in Weems’s lane of traffic all support the jury’s
finding.  We do not find that the
testimony in support of the jury’s finding to be so weak as to make the verdict
clearly wrong or manifestly unjust.   See Dow Chem., 46 S.W.3d at 242. 

We overrule Mrs.
Austin’s second issue.

Jury Argument

Mrs. Austin argues Weems’s counsel
made an incurable jury argument by implying, through words and a hand gesture,
that one of the fact witnesses, Smith, had been bribed to change his
testimony.  Weems’s counsel made the
following statements in his closing argument:

Now, how do you go from
being an eyewitness to the accident, telling the deputy what you saw, then
giving a deposition two years later and telling lawyers what you saw, to
suddenly realizing, the week before trial that you really didn’t see the
accident?  How does that happen?  Does it make any sense to you?  Does your common sense give you a clue as to
how that happened?  You know good and
well how that happens.  You know good and
well how something like that comes about . . . So, how do you go from that,
seeing all of that, hearing all of that? 
How does that happen; and then on the eve of trial, suddenly you realize
I didn’t see the accident?  I didn’t see
the accident.  You know how that
happens.  You know why that happens.  

 

Mrs. Austin asserted for the first time in her
second amended motion for new trial that Weems’s counsel also made a hand
gesture rubbing his thumb against his fingers indicating money when he said,
“You know good and well how that happens. 
You know good and well how something like that comes about.”  She attached her counsel’s affidavit to
support her allegation.  Weems responded
to the motion for new trial asserting that his counsel did not remember making
the gesture, and even if he had, the implication would have been that the
witness sought monetary compensation for Mr. Austin’s family out of sympathy.
Weems did not, however, attach an affidavit or other sworn statement as
evidence.  

I.       Incurable
Argument 

Mrs. Austin failed to object at trial to the statements or
gestures and therefore waived her complaint unless she can show the harm to be
incurable.  See Living Ctrs. of Tex., Inc.
v. Penalver, 256 S.W.3d
678, 680 (Tex. 2008).  Incurable
jury argument is rare because, in most cases, retraction of the argument or
instruction from the court can cure any probable harm.  Phillips
v. Bramlett, 288 S.W.3d 876, 883 (Tex. 2009).  In those rare cases, a complaint as to an
incurable argument may be made even without a timely objection.  See Tex.
R. Civ. P. 324(b)(5); Living Ctrs. of Tex., 256 S.W.3d at 680.  “The
party claiming incurable harm must persuade the court that, based on the record
as a whole, the offensive argument was so extreme that a ‘juror of ordinary
intelligence could have been persuaded by that argument to agree to a verdict
contrary to that to which he would have agreed but for such argument.’”  Phillips,
288 S.W.3d at 883 (quoting Goforth v.
Alvey, 271 S.W.2d 404, 404 (1954)).  Incurable
argument must strike at the very core of the judicial process.  Phillips,
288 S.W.3d at 883.  Appeals to racial
prejudice and unsupported, extreme, and personal attacks on opposing parties,
counsel, and witnesses can compromise the basic premise that a trial provides
impartial, equal justice.  Living Ctrs. of Tex., 256 S.W.3d at
681.  

Nothing in the record corroborates
Mrs. Austin’s claim that counsel made a hand gesture beyond her attorney’s
affidavit—an affidavit attached for the first time to the third iteration of
Mrs. Austin’s motion for new trial.  The
trial judge did not make any statement on the record indicating that he saw the
gesture.  The failure to object to any
hand gesture at the time of the argument, or at least immediately after the
argument while the jury deliberated, created a problem with the lack of a
record of the gesture.  If counsel had
objected at that time the court could have made a fact finding regarding
whether the alleged gesture was made, a ruling much easier at the time than
three months later with the second amended motion for new trial.  The lack of an objection obviated the court’s
ability to make such a fact finding.  The
court’s failure to grant a new trial suggest that it either believed the
gesture was not made or that it could have been cured. 

The statements themselves are not
so extreme that a “juror
of ordinary intelligence could have been persuaded by that argument to agree to
a verdict contrary to that to which he would have agreed but for such argument.”  See Phillips,
288 S.W.3d at 883.  Smith’s credibility had been vigorously
attacked during cross-examination.  That
attack included questions pointing out that Smith’s testimony remained the same
for 13 years until he met with Mrs. Austin’s counsel immediately before
trial.  The argument also did not
directly accuse the witness of accepting a bribe.  

It is the lack of direct attack
that makes Mrs. Austin’s reliance on Howsley & Jacobs v. Kendall, 376
S.W.2d 562, 565–66 (Tex. 1964), in which counsel stated that “[s]omebody was
testifying through the lips of [the witness],” misplaced.  The implication from the argument here,
assuming the gesture was made, was not nearly so direct an attack.  The indication that money was a motive for
Smith’s testimony could have been interpreted as indicating that someone had
bribed the witness but could also possibly indicate that the witness was
attempting to help the Austin family financially.

Improper attacks on the
credibility of a witness or a party may be cured by instruction or
withdrawal.  See Dunn v. Bank-Tec S.,
134 S.W.3d 315, 323–24 (Tex. App.—Amarillo 2003, no pet.).  Smith admitted that his testimony had changed
and counsel was entitled to bring that fact to the jury’s attention during
argument.  Smith also provided an
explanation for his shift by saying he was confused in his statement to police
and his deposition as to the north-south direction of the road.  Even without counsel’s argument the jury did
not have to accept Smith’s explanation of the differences in his testimony.  The jury could have simply believed his
statement made to Deputy Jordan within minutes of the accident and his
deposition given within five years of the accident were more credible than his
trial testimony 13 years later.  See
Jones v. Republic Waste Servs. of Tex., Ltd., 236 S.W.3d 390, 403 (Tex.
App.—Houston [1st Dist.] 2007, pet. denied) (stating witness presented arguably
legitimate explanation for change in testimony, “Thus, the jury could have,
with the proper instruction, found [counsel’s] arguments to be deliberately
false and in bad faith.”).

The trial court could have
instructed the jury that there was no evidence of bribery, forced counsel to
clarify that he meant that the witness was attempting to help the family
financially, or simply reminded the jury that attorney argument is not evidence
and that the jury should decide the case based on the evidence.  All of these instructions, and perhaps
others, were available at the time, and would have cured any error.  See Zurita v. Lombana, 322 S.W.3d 463,
482–83 (Tex. App.—Houston [14th Dist.] 2010, no pet. h.) (holding counsel’s
argument not incurable because parties are entitled to argue facts to jury and
counsel did not use inflammatory epithets such as “liar,” “fraud,” “faker,”
“cheat,” or “imposter.”).   Assuming the gesture was made, the
argument was improper, but it was not incurably so under these
circumstances.  Mrs. Austin, therefore,
must have objected in order to preserve her complaint for appeal.  

We overrule Mrs. Austin’s third
issue.       

Conclusion

          We hold the evidence was
factually sufficient to support the jury’s verdict.  Mrs. Austin failed to preserve error as to
the admission Deputy Jordan’s testimony and any improper jury argument by
Weems’s counsel.  We affirm the judgment
of the trial court.

 

                                                                   Harvey
Brown

                                                                   Justice


 

Panel
consists of Justices Jennings, Higley, and Brown.

Justice
Jennings, concurring.











[1]           All the eye-witness depositions were taken within five
years of the accident.





[2]           Different parts of Deputy Jordan’s accident report were
admitted as three separate exhibits at various times at trial.  For ease and clarity, the parts will be
referred to as three separate reports or as the diagram, the standard report,
and the narrative report.  





[3]
          At the bottom of the police report was a section for the
investigating officer to indicate factors and conditions that did contribute
and may have contributed to the accident. 
Below this is a standardized list of 72 factors that the officer may
choose.  

 





[4]
          Mrs. Austin mentioned the word “opinion” in her objection, but limited her
objection to hearsay and never raised Texas Rule of Evidence 701 or 702.  





[5]
          Mrs. Austin does not challenge
the trial court’s ruling that Jordan could testify regarding the fault of the
parties.  When Weems asked Deputy Jordan
if he had formed an opinion as to fault based on his skill, knowledge,
training, experience, and investigation, he testified, “The pedestrian was at
fault for walking in or standing in the roadway.”  In her brief to this court, Mrs. Austin does
not address Deputy Jordan’s opinion on fault.





[6]
          Mrs. Austin stated the
italicized portions in the factual summary of her motion to exclude, though at
no time in her argument section.  Reading
the motion broadly, we believe she preserved error as to the two statements
indicated in her motion.





[7]           The
court in Jones explained that the
trial court has no obligation to “sort through challenged evidence in order to
segregate the admissible from the excludable . . . If evidence is offered and
challenged which contains [both admissible and inadmissible parts] the trial
court may safely admit it all or exclude it all, and the losing party, no
matter who he is, will be made to suffer on appeal the consequences of his
insufficiently specific objection.”  Jones v. State, 843 S.W.2d 487, 492
(Tex. Crim. App. 1992).





[8]           This rule has been repeatedly
utilized to find any error was waived concerning summary judgment evidence.  See, e.g., Columbia Rio Grande Reg’l Hosp. v.
Stover, 17 S.W.3d 387, 396 (Tex. App.—Corpus Christi 2000, no
pet.) (stating that objections to four exhibits on basis of hearsay did not specifically
identify objectionable hearsay statements and did not preserve error); Moulton
v. Vaughn, 982 S.W.2d 107, 110 (Tex. App.—Houston [1st Dist.] 1998, pet.
denied) (noting that objection directed to affidavit as whole, which does not
point out which part is objectionable, preserves nothing for review).





[9]           If Mrs. Austin had preserved error, we agree with the
concurring opinion that any error would be harmless.